Upon an indictment for the murder of one Irby Holmes, the defendant was tried at the January, 1941, Criminal Term of Wayne County Superior Court, and convicted of murder in the first degree. From a sentence of death ensuing upon the verdict, the defendant appealed to this Court.
The evidence, including the confession of the defendant introduced in the evidence, tended to establish the following history of the murder:
The defendant had worked for Goldsboro Floral Company, about half a block from where the Holmes lived, for many years. While so employed he started writing "numbers" with the Holmes and went to their *Page 539 
house often. According to this confession, Mrs. Holmes begged the defendant many times to get rid of her husband and promised to give him enough money out of the insurance to go into the floral business, which would be from $2,000.00 to $2,400.00. She persisted in this demand for many months. The defendant went to the house very often to check on "numbers" that he had written and frequently found her crying, and she was very persistent with him to do the job and said it would be a great favor to her. He was to get the money as soon as she collected from the insurance company, although there might be a delay. The last time they discussed the money was when she finally told him she had only received $1,600.00 and would not be able to pay what she promised. After he killed Irby she gave him $14.00 on one occasion and $8.00 on another — in all, small sums, a total of $150.00. Defendant and Mrs. Holmes traded, that is, they shook hands, and she said she would sit in the chair until Doomsday before she would ever tell it.
Preceding the killing, and on the same night, Mrs. Holmes passed defendant in the street and asked: "When are you going to do it?" and he replied: "We will take a little ride tonight."
While he was at the Floral Company, about half a block away, he saw a car drive up to the Holmes house. Defendant then went to the house, rang the bell, and told Mr. Holmes he wanted him to take him off a piece, as he wanted to "pick up something." They rode out the Raleigh highway and after passing the Broadcasting Station they turned to the left toward the woods. Here Mr. Holmes stopped the car to attend to a call of nature, and as he started to get back in, with the door still open, defendant struck him with a hatchet several times. Holmes slid down to the ground. Defendant walked back toward Goldsboro, throwing his hatchet into the weeds; went to the Floral Company and burned his vest and jumper. Later Mrs. Holmes asked him if Mr. Holmes suffered and he said no as the first lick passed him out. Defendant further stated that he was induced to kill Holmes because many times Mrs. Holmes was crying and telling him that Holmes was beating her and treating her so bad and spending all her money, he just felt sorry for the woman and, feeling so sorry for her, that he just weakened and gave in and agreed to do it.
Defendant stated in his confession that he waited so long because he did not want to do it, but that Mrs. Holmes over a long period of time kept persuading him to kill her husband. He had to go to the house often on account of writing "numbers" and Mrs. Holmes did most of the settling for the "numbers" business. He had been approached first about six months before the killing. He had tried to persuade Mrs. Holmes to quit Holmes instead of having him killed. Defendant said he did not know why he did it except over-persuasion; that he had no malice *Page 540 
towards Holmes — "she just nagged him, persuaded him, and was so persistent that something took place."
The making of the confession, as related, was corroborated by other testimony.
There was evidence as to the finding of Holmes' body and the character of the wounds.
The defendant went upon the stand, confirming substantially the confession theretofore made.
The exceptions relied on by the defendant are related to the charge of the judge, to the effect that there was no evidence of insanity in the case and that the jury would not consider any.
It does not appear in the record that the defendant made any formal plea of insanity, either as existing at the time of the hearing or as existing at the time of the homicide. As to the latter, such defense might be made, of course, under the plea of not guilty. While from the record it appears to have been made a part of the argument of counsel justifying the reference to it in the judge's charge, there actually is no evidence in the record tending to show that the defendant was insane either at the time of the trial or at the time of the homicide, and there is no error in the charge in that respect.
Since the defendant was convicted of murder in the first degree, we have very carefully inspected the record and the case on appeal to find error if it is present. We find none in the record and none in the trial, and the judgment of the court below must be affirmed.
No error.